[Civ. No. 49592. Second Dist., Div. Three. Aug. 26, 1977.]

JOHN A. ARTUKOVICH SONS, INC., Plaintiff and Respondent, v. AMERICAN FIDELITY FIRE INSURANCE COMPANY, Defendant and Appellant.

942

**COUNSEL**

Barry Bernstein and Kent L. Vallette for Defendant and Appellant.

Monteleone & McCrory and Alan P. Ribakoff for Plaintiff and Respondent.

**OPINION**

**POTTER, J.**—Defendant American Fidelity Fire Insurance Company appeals from a judgment in favor of plaintiff John A. Artukovich Sons, Inc. The judgment awarded plaintiff principal in the sum of $35,517.71, interest in the amount of $3,039.81, plus costs of suit (including attorneys' fees) in the sum of $6,769.05 as the amount due pursuant to the terms of a public works payment bond covering Stuckey Engineers, the contractor on a construction project for the City of Oceanside. The project was the installation of a sewer system known as "North Valley Sewer Improvement District-Schedule 1."

At the trial, plaintiff submitted evidence concerning nine separate items comprising charges for equipment rental, repairs and modifications to equipment and hauling charges. Defendant did not dispute six of these nine totaling $15,117.71, but took issue with three items, the amount of which defendant claimed was in excess of that covered by the bond.

The three items in dispute were plaintiff's claims for (1) $11,250 comprising three months' (July 22, 1974, to Oct. 21, 1974) minimum rental at $3,750 per month for a Buckeye trencher; (2) $4,675 comprising rental for six months and nine days (Apr. 9, 1974, to Oct. 15, 1974) at a monthly rate of $750 per month for a trench shield; and (3) $1,800 comprising one month's (July 25, 1974 through Aug. 24, 1974) minimum rental for a Lima truck crane. Defendant contested these three items on the basis that although the equipment had been delivered to the job and was employed in the work for a portion of the period covered by the rental claims, work on the project ceased July 29, 1974, and thereafter the equipment sat idle until plaintiff recovered it. It was defendant's position that rental charges for the equipment were not covered by the bond except when it was actually being used on the project and that the cessation of work on July 29, 1974, cut off its liability for further rental charges.

Inasmuch as no findings of fact were requested or made, it is not possible to state definitely what the nature of the cessation of work on the project was. It is undisputed that the contractor stopped work on the project on July 29, 1974. Defendant claims that a "dispute arose between Stuckey and the City of Oceanside over the availability of a certain portion of the right-of-way for Stuckey's installation of underground pipe." However, no citation to the record is given which supports such assertion. Plaintiff's president testified that he was informed "around the end of July" that Stuckey Engineers were "having difficulties with the City of Oceanside with respect to estimates and right of way and other problems," and were on that basis "going to shut the job down and put the matter in the hands of their attorneys and try to resolve them through negotiation." However, Stuckey Engineers did not at that time say anything about picking up the equipment and "for the next two, three, four weeks" reported "that the negotiations were continuing, and that possibly they might be able to resolve their differences and start up construction again." Other testimony with respect to the status of the project after July 29, 1974, was the uncontradicted testimony of the city engineer as follows:

"Q. BY MR. RIBAKOFF [counsel for plaintiff]: After the contractor left the project on July 29th, a series of negotiations commenced between the contractor and the City, did they not, sir? A. That is correct. Q. That was in an attempt to get the contractor to return to the project? A. Physically,

yes. Q. And as a matter of fact, the City did not notify the contractor that its work had been terminated, its contract had been terminated until September 16; isn't that right, sir? A. Yes, sir, that is correct."

Plaintiff's president admitted that he was aware "sometime in mid-September that, you know, the jig was up for Stuckey, and that they were done with the job, and they were in default." The truck crane was returned on or about September 4, on the basis that the initial one-month minimum rental period had expired, that plaintiff had immediate need for the equipment and would replace it if the work resumed. The trencher was not returned until approximately the expiration of the three-month minimum rental period when Stuckey Engineers agreed that they would have no further use for it.

Additional evidence in behalf of plaintiff was to the effect (1) that the cost to plaintiff of modifications to the trencher to meet Stuckey's requirements was $7,051.25 which exceeded by $2,051.25 the $5,000 maximum charge for which it agreed to make such modifications; (2) that the trencher was not currently being manufactured as a production item and could only be obtained on special order with a delay of a year to a year and a half; and (3) that without a commitment for a minimum of three months' rental, plaintiff "would not even have rented it. We wouldn't have bothered to rent it or prepare the machine for a month or whatever. It is not worth the trouble."

The reasonableness of this arrangement was confirmed by Mr. Ralph Campbell, a partner of Stuckey Engineers, who agreed that it was not possible to obtain such a piece of equipment on less than a three-month minimum rental basis.

The court rendered an oral statement of its intended decision. Plaintiff's claim on account of the minimum rental for the trencher was upheld in full. In upholding this claim, the court noted that the trencher was actually delivered to the job site and used "for a good period of time before the termination of activities by Stuckey on July 29, 1974," and that there was a specific written agreement between plaintiff and Stuckey for a guaranteed three-months' minimum rental. The court referred to Mr. Campbell's deposition testimony that it was "common practice within the industry and within this business to have a minimum period of time for equipment such as this to be guaranteed for rental." The

court reasoned that if the minimum period were not agreed to by Stuckey Engineers, then plaintiff would not have rented the equipment and it would not have been available for the project, and concluded that a three-month minimum period was "a reasonable minimum period" in view of the cost of modification and the size and scope of the project.

With respect to the one-month minimum rental charge for the truck crane, the court again noted the existence of an express written agreement for a one-month minimum rental and found that such minimum rental period agreed to in good faith was not "an unreasonable period."

With respect to the charges for the rental of the trench shield, for which plaintiff claimed rental through October 15, 1974, the court limited recovery to the monthly rental period ending September 8, 1974. Inasmuch as the first rental period to expire after the July 29 termination of work was only 11 days thereafter, it was reasonable not to withdraw the equipment in view of the reported negotiations between Stuckey Engineers and the city. Though the period between July 29 and August 8 was "too short a period of time for the plaintiff to get the equipment out of there and to consider the job really and totally and completely at an end," the court considered that "certainly by September the 8th of '74, which was the end of the next monthly period on this $750 a month shield, that the plaintiff knew by that time, by September 8th, that for all practical purposes the need for his equipment out there as far as the shield is concerned had terminated." On this basis, the court eliminated $925 (for the period September 9 through October 15, 1974) from plaintiff's claim for this item.

### Contentions

Defendant contends that its liability under the bond is limited to items which "Materialize in Some Contribution to the Work of Improvement and Are Within the Contemplation of the Parties to the Contract," and that the charges objected to but allowed by the court do not meet these criteria. Plaintiff contends, to the contrary, that the bond secures payment of the agreed rental for the equipment furnished to and made available for use on the project regardless of the amount of actual use made thereof.

*Discussion*

The statutory provisions for performance bonds on public works of improvement are intended to substitute for the mechanics' lien rights available to "[m]echanics, materialmen, contractors, subcontractors, lessors of equipment . . . bestowing skill or other necessary services on, or furnishing materials or leasing equipment to be used or consumed in or furnishing appliances, teams, or power contributing to a [private] work of improvement . . . ." (Civ. Code, § 3110.) The mechanics' lien provisions of Civil Code section 3110 are made inapplicable "to any public work" by Civil Code section 3109. In lieu thereof, Civil Code section 3248 provides with respect to public works that a "payment bond" be furnished which shall "[p]rovide that if the original contractor or his subcontractor fails to pay any of the persons named in Section 3181 . . . with respect to such work and labor that the surety or sureties will pay for the same . . . ." Section 3181, in turn, includes among those entitled to protection of the bond "any person mentioned in Section 3110 . . . ." It is thus clear that plaintiff, as a "lessor[] of equipment . . . leasing equipment to be used" in the "work of improvement," was a person entitled to the security of the obligation of the payment bond.

The extent of the obligation of payment bonds is stated in Civil Code section 3226 as follows: "Any bond given pursuant to the provisions of this title will be construed most strongly against the surety and in favor of all persons for whose benefit such bond is given, and under no circumstances shall a surety be released from liability to those for whose benefit such bond has been given, by reason of any breach of contract between the owner and original contractor or on the part of any obligee named in such bond, but the sole conditions of recovery shall be that claimant is a person described in Section 3110, 3111, or 3112, and has not been paid the full amount of his claim."

The legislative policy of liberality in favor of payment bond beneficiaries is further evidenced by the fact that though mechanics' lien claims are limited in amount to "the reasonable value of the labor, services, equipment, or materials furnished or for the price agreed upon by the claimant and the person with whom he contracted, whichever is less" (Civ. Code, § 3123), no similar limitation has been placed upon the amount of the beneficiaries' claim against the surety. California Mechanics' Liens and Other Remedies (Cont.Ed.Bar 1972) section 4.45, pages

120-121, states: "Although a mechanics' lien may not exceed the reasonable value or the contract price, whichever is less, *H. G. Fenton Material Co.* v. *Noble* (1932) 127 CA 338, 15 P2d 884, held that the contract price prevailed in a bond action. Since new CC § 3123 is similar to the statutes involved in the *Fenton* case, it is likely that the holding in *Fenton* would be the same today."

The basis of the holding in *Fenton* is the decision of our Supreme Court in *Williamson* v. *Egan*, 209 Cal. 343 [287 P. 503]. In *Williamson*, a judgment of the trial court awarding the beneficiary the agreed monthly rental for draft animals furnished to the contractor was affirmed over the objection of the surety that it should only be held responsible for such portion of the rental period that the animals actually were able to work on the project. Concerning this aspect of the case, the court said (*id.*, at p. 349): "It is contended, finally, that as against the defendant Surety Company the judgment is erroneous because it makes no allowance in rental for the time the teams might not have worked on the job due to rain or unfavorable conditions; that the surety is liable only for rental during the time the teams were actually used on the work of improvement. This argument is predicated upon the language of the bond obligating the surety to pay for labor, materials, etc., 'used in, upon, for or about the performance of the work.' We are not disposed to give so narrow a construction to the terms of the bond. The plaintiff did not agree to permit his teams to be present on the job, ready to work at any and all times, but without compensation in the event they could not work for a day or more or for a fractional part of a day because of conditions over which plaintiff had no control. It is not shown that the contract for rental was unreasonable, nor that it did not represent the usual terms and charge for such rental. Delays due to the weather were a part of the surrounding circumstances which entered into the cost of the improvement. The bond sued upon here is one required by statute and its provisions are to be liberally construed to effectuate its purpose. (*Continental Nat. Bank* v. *Republic Cas. Co.*, 202 Cal. 586, 589 [262 Pac. 300].)"

The language of the bond in this case is identical to that employed in the bond involved in *Williamson*.

Defendant does not question the sufficiency of the evidence to support the trial court's findings that the minimum rentals provided in the leases

of the trencher and truck crane were reasonable and represented the usual terms for such rental. Defendant seeks to distinguish *Williamson* on the ground that the "*sporatic* [*sic*] idleness" of the draft animals "was obviously within the contemplation of the parties," whereas the "cause for Artukovich's equipment standing idle on the project was uncontemplated by any of the parties." ■ Though the particular cause for the equipment standing idle may not have been specifically contemplated, it is patent by virtue of the fact that minimum rental periods were stipulated that the parties did contemplate the equipment might not be used for such minimum periods. Therefore, the fact that the equipment might be idle during a portion of the minimum rental period clearly was contemplated by the parties who agreed that the minimum rental was nonetheless payable. No valid basis to distinguish *Williamson* has, therefore, been shown and it is determinative on this issue.

Defendant has cited and relied upon several decisions of the federal courts construing the performance bond requirements of the Miller Act (40 U.S.C. § 270a et seq.). No valid purpose would be served by an extended discussion of these cases. It is sufficient to note that none of them are in point on the facts inasmuch as none of them involved a claim for the agreed amount of lease rental stipulated in the leasing contract. Insofar as these federal cases hold that claims for damages for breach of contract are not recoverable against the Miller Act surety, they have no application to the case at bench. Plaintiff herein is not seeking such damages. It is seeking solely the stipulated minimum rental pursuant to the terms of the written leasing contracts.

The foregoing disposes of defendant's objection to the allowance of the full minimum rental of three months with respect to the Buckeye trencher and one month with respect to the Lima truck crane. ■ The same principles also require affirmance of the court's allowance of the stipulated monthly rental with respect to the trench shield for the period July 29, 1974, through September 8, 1974. In the absence of any request for findings, this court "may resort to an implied finding to uphold the judgment." (*In re Marriage of Dawley,* 17 Cal.3d 342, 354 [131 Cal.Rptr. 3, 551 P.2d 323].) The evidence established that the shield was leased on a monthly basis and that when Stuckey Engineers advised of the cessation of work, they did not offer to return the shield and indicated "for the next two, three [or] four weeks" that negotiations were continuing for a resumption of work. Inasmuch as no arrangement was

made to retain possession of the shield without the payment of the stipulated rental, Stuckey Engineers impliedly agreed to continue to pay the monthly rent. Though the trench shield was not actually used in furtherance of the project during the subsequent rental period August 9 through September 8, the evidence supported the court's implied finding that it was retained there in furtherance of the project to be immediately available if the negotiations were successful. It was, therefore, furnished by plaintiff "for or about the performance of the work contracted to be done" within the terms of the performance bond. By virtue of the fact that the work was never resumed, no actual benefit materialized. However, even with respect to mechanics' lien claims which, as above pointed out, are more strictly construed than claims by bond beneficiaries, it is not necessary to prove that "the owner receives a benefit" in order to establish that labor or materials have been furnished to be used in the work. (*Hardwood Interior Co.* v. *Bull,* 24 Cal.App. 129, 131 [140 P. 702].)

The judgment is affirmed.

Cobey, Acting P. J., and Allport, J., concurred.