[Civ. No. 22118. Third Dist. May 27, 1983.]

MICHAEL D. WALTON et al., Plaintiffs and Appellants, v.
MARCH FONG EU, as Secretary of State, etc., et al.,
Defendants and Respondents.

COUNSEL

Stephen J. Kennedy for Plaintiffs and Appellants.

George Deukmejian and John K. Van de Kamp, Attorneys General, Richard D. Martland and N. Eugene Hill, Assistant Attorneys General, and Susan P. Underwood, Deputy Attorney General, for Defendants and Respondents.

OPINION

BLEASE, J.—In this class action suit, the trial court granted summary judgment in favor of defendant.[1] We will reverse the judgment.

---

[1] Defendants March Fong Eu and the State of California are collectively referred to as defendant.

*Facts*

Plaintiffs entered into a contract with National Buyers Association, Inc. (National), a discount buying organization. National breached its contract and on September 26, 1980, plaintiff obtained a judgment against National in the Alameda County Municipal Court.

In March 1977, National made a cash deposit, in lieu of bond, with defendant. (Former Civ. Code, § 1812.105.)[2] The deposit took the form of an investment certificate issued by Home Savings and Loan Association in the face amount of $30,000. Plaintiffs sought, on October 1, 1980, to satisfy their judgment by demand upon defendant from this source. They were too late; the last of the funds from the certificate had been paid out by defendant three months earlier.

Prior thereto, on March 14, 1980, counsel for plaintiffs advised defendant that he was representing a claimant against National and was told a cash deposit had been filed. Apparently counsel did not inquire, nor was he informed, what method defendant would follow in satisfying the claims already on file.

Plaintiffs were not the only parties who were injured by National. Beginning in November 1979, numerous judgments were taken against National and were submitted to defendant for payment against the deposit which National had filed. Claims continued to be filed throughout the early months of 1980.

Beginning April 25, 1980, defendant paid claims against the deposit, apparently in the order of presentation. By June 30, 1980, defendants had paid a total of $29,316.30 to various claimants. Defendants forfeited the remaining balance of the investment certificate in the amount of $683.70 to Home Savings and Loan Association "for interest penalty for withdrawal prior to maturity of the investment certificate."

Plaintiffs filed this action alleging improper disbursement of the funds by defendant. Defendant answered and moved for summary judgment asserting, inter alia, that absent legislative direction, defendant was vested with the discretion to distribute the funds in any manner chosen by it. This appeal followed judgment for the defendant.

*Discussion*

I

Discount buying organizations are regulated by Civil Code section 1812.100 et seq. They must maintain a $30,000 surety bond in favor of the

[2]Repealed by Statutes 1982, chapter 517, section 63.

State of California (Civ. Code, §§ 1812.103, 1812.104[3]) or, in lieu thereof, make a cash deposit with defendant, which may include a bank certificate of deposit, which must be placed "in an interest-bearing trust account" (former Civ. Code, § 1812.105[4]).

The bond is for the benefit of any person "who is damaged by any violation of [title 2.6] or by fraud or dishonesty or failure" of the discount buying organization to provide the services which it has contracted to perform. (Civ. Code, § 1812.104.) The aggregate liability of the surety is limited to the amount of the bond or deposit. (*Ibid.*) The statutes do not specify the manner in which the sums are to be disbursed when the aggregate claims exceed the amounts deposited. Nor is express provision made for disposition of the interest earned on a cash deposit.

Plaintiffs contend that when the aggregate claims against the bond or cash deposit exceed the amounts deposited the surety has a duty to pay the claims on a pro rata basis. Defendant counters that, since section 1812.104 fails to prescribe any procedure for satisfying the claims, it may distribute the deposit in any expeditious manner including, as here, first-come-first serve. We disagree.

Whether or not defendant has the authority to implement the statute by regulations specifying the method of distribution (see Gov. Code, § 11342.2), it does not have unfettered discretion over the manner in which it exercises its statutory authority. The statute sounds in surety relations. ■ We conclude

---

[3]Civil Code section 1812.103 provides: "Every discount buying organization shall maintain a bond issued by a surety company admitted to do business in this state. The principal sum of the bond shall be thirty thousand dollars ($30,000). A copy of such bond shall be filed with the Secretary of State."

Former Civil Code section 1812.104 provided: "The bond required by Section 1812.103 shall be *in favor of the State of California* for the benefit of any person who is damaged by any violation of this title or by fraud or dishonesty or failure to provide the services of the discount buying organization in performance of the contract. The bond shall also be in favor of any person damaged by such practices. Any person claiming against the bond may maintain an action at law against the discount buying organization and the surety; provided, however, that *the surety* shall be liable only for the actual damages plus restitution . . . . [¶] The aggregate liability of the *surety* to all persons for all breaches of the conditions of the bond provided herein shall in no event exceed the amount of the bond." (Italics added.)

[4]Former Civil Code section 1812.105 provided: "In lieu of furnishing the bond as required by Section 1812.103, the seller may deposit with the *Secretary of State* a cash deposit in a like amount. This cash deposit may be satisfied by any of the following: [¶] (a) Certificates of deposit payable to the Secretary of State issued by banks doing business in this state and insured by the Federal Deposit Insurance Corporation; [¶] (b) Investment certificates for share accounts assigned to the Secretary of State and issued by a savings and loan association doing business in this state and insured by the Federal Savings & Loan Insurance Corporation; [¶] (c) Bearer bonds issued by the United States government or by this state; [¶] (d) Cash. Cash deposited pursuant to this section shall be maintained by the Secretary of State in an interest-bearing trust account." (Italics added.)

Hereafter all statutory references are to the Civil Code unless otherwise designated.

defendant must be held bound by the principles of law applicable to sureties, which are implicated by the Act.

Defendant seeks exemption from the surety principles because a cash deposit was made in lieu of a surety bond. We find nothing in the statutory scheme which suggests the rights of a creditor of a discount buying organization turn upon the form in which the surety has been provided. Defendant's status as a payee on a statutory bond or cash deposit for the benefit of others is that of agent or trustee for the persons damaged. (See *Iowa State Commerce Com'n* v. *IGF Ins. Co.* (1981, Iowa) 309 N.W.2d 445, 448.) Defendant assumes the position of surety and safeguards the proceeds deposited by the licensee *solely for the benefit of injured persons.* (See *Ibid.*)

"[W]here a bond is given to protect the individual members of the public who deal with the principal on the bond from injury caused by his fraud or negligence, and the extent of the surety's liability is limited to certain amount, when claims are made to the surety in excess of the amount of the penalty the total amount of the penalty should be prorated among the persons so damaged." (*New Amsterdam Casualty Co. et al.* v. *Hyde* (1934) 148 Ore. 229 [34 P.2d 930, 934]; see *Fidelity & Deposit Co.* v. *Stephenson* (1938) 26 Cal.App.2d 241, 244-245 [79 P.2d 115]; *Western Surety Company* v. *Childers* (Okla. 1962) 372 P.2d 214, 218, overruled on other grounds in *Barbero* v. *Equitable Gen. Ins. Co.* (Okla. 1980) 607 P.2d 670; Connors, Cal. Surety & Fidelity Bond Practice (Cont.Ed.Bar 1969) § 28.15, p. 393, hereafter cited as *Connors.*) "The surety may go into a court of equity and have all claimants interpleaded, and have the court prorate the fund upon the the claims established." (*New Amsterdam Casualty Co.* v. *Hyde, supra,* 34 P.2d at p. 934.) "A surety that pays one or more of these claims when it has notice that other claimants exist could be held liable to the remaining claimants even though it has already paid the full bond penalty. This rule is premised on the right of each claimant to share pro rata in the bond penalty." (*Connors, supra,* at p. 393; see *Miles* v. *Fidelity and Casualty Co. of New York* (La.App. 1966) 185 So.2d 613, 618-619.)

These legal principles require the funds be distributed pro rata when the claims exceed the amount on the bond, and hold the surety liable beyond the bond amount if it has paid out the full amount of the deposit to one or more claimants with notice that other claimants exist.

Here, there is a triable issue of fact whether defendant had notice, at the time it began payment, of claimants whose claims remained unsatisfied.[5] The granting of summary judgment was erroneous.

[5]Defendant received notice of plaintiffs' claim on March 18, 1980—well before the funds were distributed. In addition, although the last of the deposit was distributed on June 30, 1980,

## II

Plaintiff also takes issue with defendant's decision to forfeit almost $700 interest penalty for withdrawal prior to maturity of the investment certificate, a decision which left defendant with approximately $29,300 to disburse to the numerous claimants. We find merit in the claim.

Former section 1812.105 provided in pertinent part: "In lieu of furnishing the [$30,000 surety] bond as required by Section 1812.103, the seller may deposit with [defendant] a cash deposit *in a like amount.* This cash deposit may be satisfied by any of the following: [¶] (b) Investment certificates for share accounts assigned to [defendant] and issued by a savings and loan association doing business in this state and insured by the Federal Savings & Loan Insurance Corporation . . . ." (Italics added.)

"[I]n a like amount" can only mean that, when made, the value of the cash deposit is at least $30,000—equal to the principal sum of a surety bond had a bond been filed. Here, defendant permitted National to deposit an investment certificate worth substantially less than $30,000, but with a face value of $30,000 at maturity. Compounding the error, plaintiffs withdrew the funds prior to maturity.

Defendant's action in accepting a cash deposit worth less than the statutorily required minimum principal sum was beyond its authority; it is liable for the difference between the $30,000 and the amount paid the claimants.

## III

Finally, defendant contends there can be no liability in its role as surety because plaintiff's action is barred by the California Tort Claims Act. (Gov. Code, §810 et seq.) Defendant relies on Government Code section 818.2 which provides immunity to a public entity for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law. Defendant's argument is misplaced. A statutory bond, such as that required here, is a third party beneficiary contract, obligating the surety for damages caused by the licensee to a claimant who is within a class of persons protected by the code provisions under which the bond was written. (*Connors, supra,* § 28.5, p. 390.) The immunities provided in the Tort Claims Act are inapplicable, because this is an action on a contract. (See Gov. Code, § 814: "Nothing in this part affects liability based on contract or the right to obtain relief other than

---

this was for a claim filed conceivably as early as mid-April 1980. Considering that over 30 additional claims were subsequently filed, it is likely many of these latter claims were received by defendant prior to the final disbursement on June 30, 1980.

money or damages against a public entity or public employee.") No further discussion in this regard is necessary.

The judgment is reversed.

Puglia, P. J., and Evans, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 10, 1983.