**SIX COMPANIES OF CALIFORNIA v. JOINT HIGHWAY DIST. NO. 13 OF STATE OF CALIFORNIA et al.**

No. 20101–R.

District Court, N. D. California, S. D.

Aug. 8, 1938.

Thelen & Marrin and DeLancey C. Smith, all of San Francisco, Cal., and Eugene E. Trefethen and J. Paul St. Sure, both of Oakland, Cal., for plaintiff and cross-defendant.

Archibald B. Tinning, of Martinez, Cal., and T. P. Wittschen, of Oakland, Cal., for defendant and cross-complainant.

Redman, Alexander & Bacon, of San Francisco, Cal., for cross-defendants other than plaintiff.

ROCHE, District Judge.

This is an action for damages for breach of contract. It is submitted to the

court in the form of a cross-complaint, brought by the Joint Highway District No. 13, a public corporation of the state of California, hereafter called the District, against the Six Companies of California, a Nevada Corporation, licensed as a contractor in the State of California, and numerous foreign corporations, sureties on the Six Companies' bond. Hereafter the Six Companies will also be referred to as the Contractor.

On July 1, 1936, litigation was begun by the Six Companies, which sought to recover $3,259,659.04, the balance claimed to be due for work done and materials furnished to the District. An answer and cross-complaint were filed by the District, which denied any indebtedness and set forth its own claims.

The District's cross-complaint alleges that on June 4, 1934, the District, in accordance with its authority, entered into a contract with the Six Companies whereby the latter agreed to undertake a project for the construction of a highway and highway tunnels and to furnish a faithful performance bond to the District. The surety companies, which have been joined as cross-defendants, were made jointly and severally liable with the Contractor upon the bond.

The District further alleges as follows: On June 13, 1936, the Six Companies abandoned their work, which was then about 70% completed. The Six Companies claimed the right to rescind the contract on several grounds, which were set forth in the notice delivered to the District upon the cessation of work by the Contractor. The District promptly notified the Contractor and the surety Companies that they must proceed with their work; that if the job were not resumed, the District would have the project completed and would hold the Contractor and the sureties liable for the cost. Neither the Six Companies nor the sureties resumed construction and The District, after calling for bids, let contracts to other corporations for the completion of the work at a cost of $1,751,611.74.

The cross-complaint acknowledges that the District has retained $224,560.79, or 10% of the contract price for work done prior to May 1, 1936; that the District has in its possession an additional $265,891.82 for work performed by the Companies after May 1, 1936; that the District is holding $2,806.55 on behalf of the Companies for past work performed; that these three amounts total $493,259.16, from which sum must be deducted $10,000 retained by the District as liquidated damages, thus leaving a credit of $483,259.16. The District claims that the difference between the reasonable cost of completing the work and the contract price for the uncompleted work is $591,325.47. This sum, less the above mentioned $483,259.16 still retained for the Six Companies, leaves $108,066.31 as the reasonable cost of completing the work necessitated by the Six Companies' default.

The District alleges that it became necessary for it (a) to protect and maintain the work at a reasonable cost of $47,944.-33; (b) to measure the work at a reasonable cost of $5,134.22; (c) to readvertise for bids at a reasonable cost of $1,862.45; (d) to procure insurance at a reasonable cost of $14,060.85. These sums total $69,001.85. Furthermore, it is alleged that there was a delay of 433 days in the completion of the work directly attributable to the delay and abandonment on the part of the Six Companies. This was a reasonable period for the District to take to complete the project. It is extremely difficult to estimate all of the damages caused by the delay in the completion of the work. Liquidated damages of $500 per day for this delay are asked by the District in accordance with #4(d) of the contract, which reads as follows:

"(d) Damages for Delay.—The Parties hereto expressly stipulate and agree that time is the essence of this contract. In case the work is not completed within the time specified in the contract or within such extensions of the contract time as may be allowed as herein provided, it is distinctly understood and agreed that the contractor shall pay the District as agreed and liquidated damages and not as a penalty five hundred dollars ($500.00) for each and every working day which may elapse between the limiting date as herein provided and the date of actual completion of the work, said sum being specifically agreed upon as a measure of the damage to the District by reason of delay in the completion of the work; it being expressly stipulated and agreed that it would be impracticable to estimate and ascertain the actual damages sustained by the District under such circumstances, and the Contractor agrees and consents that the amount of such liquidated damages so fixed, shall be deducted and retained by

the District from any money then due, or thereafter to become due, the Contractor."

The District asks for a judgment against the Companies in the sum of $383,-568.16, based on the allegations of the reasonable cost of completing the work, less credits, plus interim expenditures, plus damages caused by delay.

The Contractor and the sureties, in their answer to the cross-complaint, allege that the District had breached the contract by failing to furnish lines and grades as required by the contract, by not granting the contractor an extension of time to complete the work, by deducting liquidated damages from a progress payment made to the Contractor by the District; and finally it is alleged that the District presented plans and specifications to the Contractor which were deceiving and misleading in that the Six Companies were led to believe that the ground to be encountered in driving the tunnels would be found to be self-supporting and require little timber re-inforcement during construction, but that actually the entire tunnels needed timber, thus causing the Contractor to do more excavation than planned and furnish more concrete than anticipated.

After a hearing, the Court ruled against the Six Companies on the common counts, and concluded that the plaintiffs were guilty of a breach of contract. Thus it follows that the District is entitled to relief on its cross-complaint and the only remaining question concerns itself with the amount of damages which must be awarded to the District.[1] The problem may be stated as follows: When a builder breaches a contract by reason of an abandonment, and such a contract contains a liquidated damage clause, to what extent is the builder liable in damages?

There is no dispute as to the accuracy of the various damage figures presented by the District. But the Companies, assuming a breach of contract as found by the court, deny that they are liable for liquidated damages or for the interim expenditures. The Companies assert that the provision for liquidated damages can have no application to a delay occurring after the contract has been abandoned. They further maintain that even if the provision for liquidated damages is applicable, it must be held to be unenforceable because it is a penalty.

In support of the contention that a provision for liquidated damages is inapplicable to a situation in which delay occurs because of abandonment, the Companies rely chiefly upon two California cases, namely Bacigalupi v. Phoenix Bldg. & Construction Co., 1910, 14 Cal.App. 632, 112 P. 892, and Sinnott v. Schumacher, 1919, 45 Cal.App. 46, 187 P. 105. These cases hold that a plaintiff may sue for actual damages when a defendant has breached his contract, notwithstanding a liquidated damage clause in the agreement. But this is not to say that a plaintiff, or cross-complainant, may not act upon the liquidated damage provision in a contract when he seeks damages for delay caused by an abandonment. That he may rely on such a clause is recognized in Southern Pacific Co. v. Globe Indemnity Co., 2 Cir., 1927, 21 F.2d 288, where a question much like the one in the principal case arose. There the court held that the aggrieved party may recover liquidated damages for delay, whether the contract is abandoned or not, the court saying (page 291):

"It is urged that a liquidated damage clause does not apply when work under the contract is abandoned by the contractor. * * * A close examination of the cases, however, does not in our opinion establish such a rule, and we can see no justification for it, at least when the contractor abandons after the time for completion has passed. In such a case some part of the liquidated damages has accrued before the repudiation. No intelligible reason has been suggested why the owner should lose his right to them because of subsequent repudiation.

"* * * In these cases [Bacigalupi v. Phoenix Co. and like decisions], the plaintiff made no claim to collect liquidated damages for delay, as well as the increased cost of completing the abandoned work. They are not, therefore, authorities for the alleged rule that he cannot do so. * * *"

The Court then ruled that the plaintiff was entitled to liquidated damages for the time the original contractor would have taken to complete the job, had he remained at work.

---

[1] The surety companies are jointly and severally liable under the Six Companies' bond. Certain technical defenses, which the sureties suggest might absolve them from liability, do not impress the Court.

The cases which are mentioned and distinguished in this opinion, and a statement made by Williston (Vol. 3 #785), and based upon these same cases, are relied upon by the Six Companies. The reasoning in the Southern Pacific decision—which is in accord with City of Reading v. U. S. Fidelity, etc., Co., D.C., 1937, 19 F.Supp. 350, and School District v. U. S. Fidelity & Guaranty Co., 1915, 96 Kan. 499, 152 P. 668—is sound and applies in the case before the Court.

■ Adopting the rule that a liquidated damage provision in a contract must be enforced, whether or not delay in completion is caused by abandonment, the question then arises as to the length of the period for which such damages may be recovered. Obviously, the per diem arrangement does not run during the entire period of delay. This much the District itself recognizes, for it asks for damages for 433 days, although over 500 days elapsed between the time the project was supposed to have been completed and the date the work was actually finished. The 433 days are made up of three periods: 264 days (reasonable time), for the actual finishing of the tunnels and highway by new contractors; 20 days of work for the Six Companies themselves after the contract time limit had expired; 149 days between the date of abandonment and the date work was resumed. How many of these days should be allowed in fixing the period for which liquidated damages are recoverable?

In McCormick on "Damages" at page 619 this statement is found: The delay provision applies "to this extent, that the owner may recover for the delay through the period that would have been consumed by the contractor if he had, instead of the owner, carried the work to completion." Under this rule, the first two periods may properly be tabulated in ascertaining the time necessary to carry out the project if the Six Companies had themselves completed the work. But the third item—the lapse of time during which no work was done—may not be considered. It may be argued that it is unfair to disregard the gap between construction periods, for it is impossible to avoid such delay. This is true, but the Court believes that the rule as stated by McCormick is both practical and in accordance with the intent of the parties to the contract, even though it may work a hardship in certain cases. By refusing to award damages for the total period of delay, the temptation to procrastinate in employing new contractors is diminished. And even when the employer acts in good faith and with as much speed as possible, as in the case at bar, there are many factors which may operate to prolong the period of inactivity indefinitely, such as the District's inability to get bids from new contractors. To allow per diem damages to accrue during such a period of suspension in operations would be neither fair nor in accordance with the intent of the parties. Furthermore, the liquidated damage clause in the contract before the court refers to "every *working day* which may elapse between the limiting date * * * and the date of actual completion"—and not simply to the total lapse of time between the start and the finish of the project. This contract language necessarily leads the court to follow the McCormick rule.[2] In the normal case, the delay provision applies to the original contractor; in our case, which is exceptional, it applies to the time the Six Companies *would have taken* had they completed the job themselves—and this time is measured by the period reasonably required by the new contractors to finish the project. The intent of the parties is to determine the harm caused by the late completion of the work; liquidated damages must be limited to such a period.

■■ There is no merit in the contention of the Six Companies that the liquidated damages provision is void. Section 1670 of the California Civil Code, while declaring fixed damage clauses invalid in many contracts, is followed by an exception which applies directly to the facts found in the principal case. The exception is contained in section 1671 of the California Civil Code which reads: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sus-

2 In School District v. U. S. Fidelity & Guaranty Co., 1915, 96 Kan. 499, 152 P. 668, liquidated damages were allowed for the reasonable period of delay, including the period of inactivity. We do not believe that such an award was incorrect in view of a contract provision allowing damages for each day beyond a certain time until the work was completed; but we think that the contract and the facts in the principal case do not warrant the inclusion of the gap between abandonment and recommencement of work.

tained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage." Clearly the contract between the District and the Six Companies comes within this exception. The injury suffered by the District through delay in performance cannot be measured accurately. It is known that the cost of maintaining the District is $272.89 per day; but how can the harm caused by the lack of use of the highway and highway tunnels be determined? The interest on the bonds amounting to about $200.00 per day is not a yardstick for measuring such damages. Even if the maintenance cost and the interest are looked upon as a rough approximation of the injury suffered by the District, they do not take the case out of the exception; they merely indicate that the $500.00 liquidated damage provision in the contract comes close to measuring actual damages. Furthermore, at the time the contract was drawn up, there was no accurate way of measuring the injury which might be suffered through delay in completing the project and thus preventing its use. Hanlon Drydock Co. v. McNear, 1924, 70 Cal. App. 204, 210, 232 P. 1002, and Pacific Factor Co. v. Adler, 1891, 90 Cal. 110, 27 P. 36, 25 Am.St.Rep. 102, both hold that if the damages are not measurable at the time the contract is entered into, then· a liquidated damage provision is valid; nor is it nullified by the fact that it may be called a penalty. The Supreme Court has also sustained such liquidated· damage provisions, even in the absence of proof of any actual damages. U. S. v. Bethlehem Steel Co., 1907, 205 U.S. 105, 27 S.Ct. 450, 51 L.Ed. 731; Wise v. U. S., 1919, 249 U. S. 361, 39 S.Ct. 303, 63 L.Ed. 647;· Robinson v. U. S., 1923, 261 U.S. 486, 43 S.Ct. 420, 67 L.Ed. 760, and other cases. The provision in the principal case is valid.[3]

 The assertion of the Six Companies that they are not liable for the interim expenditures does not warrant serious consideration. The costs of maintaining the work after abandonment, of calling for new bids and of making other necessary expenditures for keeping the project in order until work could be resumed, obviously spring directly from the breach of contract and are recoverable as damages. The reasonableness of the amounts has neither been refuted nor seriously challenged; the evidence sustains them.

Accordingly, the Court holds that the District is entitled to the interim expenditures of $69,001.85, plus the reasonable cost of completing the project of $98,066.31, plus liquidated damages for the period of 284 days of $142,000.00, or a total of $309,068.16; that each surety company cross-defendant which has continued to be a party to this action, is liable for the percentage which it assumed on the Six Companies' bond; that costs of this suit be paid by cross-defendants; that findings of fact and conclusions of law be prepared by the District pursuant to Rule 42 of this Court.

---

[3] It is necessary that an adjustment be made in the allocation of damages in the principal case. The District has deducted $10,000 from the amount which is being held for the cross-defendants. This sum of $10,000 represents liquidated damages for the 20 days' delay by the Six Companies before their abandonment. Thus the District has figured an element of liquidated damages in its determination of the reasonable cost of completing the project. This we believe to be error, even though the District is entitled to the $10,000 quite apart from the Court's ruling on the general question of liquidated damages. The entire sum due the District as liquidated damages should be computed as a unit—264 days by new contractors plus 20 days by the Six Companies. There must be no confusion between liquidated damages and reasonable costs.