[No. A016128. First Dist., Div. Three. July 9, 1984.]

PACIFIC EMPLOYERS INSURANCE COMPANY,
Plaintiff and Appellant, v.
CITY OF BERKELEY, Defendant and Respondent.

**COUNSEL**

Raymond M. Alexander, Jr., and Adams & Philipps for Plaintiff and Appellant.

Natalie E. West, City Attorney, for Defendant and Respondent.

**OPINION**

**BARRY-DEAL, J.**—Pacific Employers Insurance Company (Pacific) appeals from a summary judgment entered in favor of the City of Berkeley (the city) which established that the city was entitled to withhold certain funds as liquidated damages from its payment to Pacific under a construction contract for which Pacific was the completing surety. We affirm.

### The Facts

On or about November 26, 1974, the city entered into a contract with Emerald Builders (Emerald) for construction of the James Kenney Park Community Recreation Center, for the total sum of $759,061. Initially construction was to be completed by October 18, 1975, 300 days after commencement of the work, but the city granted extensions for completion to

May 6, 1976. Emerald did not meet that deadline, but it continued to work on the project until it abandoned it on September 17, 1976. During the period between the required completion date and abandonment, the city continued to make progress payments to Emerald.

When Emerald abandoned the project and the city cancelled the contract, Pacific, which had supplied a performance bond to Emerald as principal in favor of the city as obligee, responded to the city's demand and arranged for another contractor to complete the project. This was accomplished on April 2, 1977, at a cost to Pacific of $138,651.82.

Ultimately the city paid Pacific $57,892.93, leaving Pacific with unreimbursed completion costs of $80,758.89, and an undisbursed contract balance in the hands of the city of $87,982.73. The city claimed an offset against this balance for liquidated damages occasioned by delay in completion of the project at the contract rate of $250 per day from May 6, 1976, to April 2, 1977, for a total of $82,500.[1]

In granting summary judgment to the city, the trial court ruled that it was entitled to this offset for liquidated damages. The propriety of that determination is the subject of this appeal.

*Discussion*

*The Bond*

The bond given by Pacific appears to be a standard form used by that company. It provides, in relevant part, as follows (italics indicates filled-in blanks): "WHEREAS, the Principal [Emerald] and Obligee [city] have entered into a certain contract in writing, hereinafter called the contract, dated *DECEMBER 10, 1974* for: *JAMES KENNEY PARK COMMUNITY RECREATION CENTER SPECIFICATION NO. 17.548* a copy of which is or may be attached hereto, and which is hereby referred to, [¶] NOW, THEREFORE, The condition of this Obligation is that if the Principal shall well and truly perform the work contracted to be performed under said contract, then this obligation shall be void, otherwise to remain in full force and effect. This bond shall inure to the benefit of the persons herinabove [*sic*] specified only so as to give a right of action to such persons or their or their [*sic*] assigns in any suit brought upon this bond."

---

[1] The city claimed an additional offset of $5,482.76 for repairs which it allegedly performed. Pacific conceded the offset for purposes of these proceedings.

## The Contract

The provision for liquidated damages in the contract was as follows: "[§] 801.6 *Liquidated Damages for Failure to Complete Work in Specified Time.* If all the work called for under the contract is not completed before or upon the expiration of the time set forth in the Bidder's Sheet, damage will be sustained by the City. Since it is and will be impracticable to determine the actual damage which the City will sustain in the event of and by reason of such delay, it is therefore agreed that the Contractor will pay to the City the sum specified in the Bidder's Sheet [$250 per day] for each and every calendar day beyond the time prescribed to complete the work [May 6, 1976], not as a penalty, but as a predetermined liquidated damage. The Contractor agrees to pay such liquidated damages as are herein provided, and in case the same are not paid, agrees that the City may deduct the amount thereof from any money due or that may become due the Contractor under the contract."

## Surety's Liability for Liquidated Damages

One leading authority indicates that by virtue of the giving of the bond alone, the completing surety will be found liable for liquidated damages. He says: "A surety completing the contract upon a contractor's default is subject to any valid penalty provision contained in the contract which could have been asserted by the obligee against the contractor. Hence, a surety, who completes the contract, is subject to the deduction from the retained percentage for delayed completion as is provided in the contract." (13 Couch on Insurance (2d ed. 1982) § 47:137, p. 314, fns. omitted [hereafter Couch].) This statement is overbroad. The case upon which the author relies does not support his assertion. In *Maryland Casualty Co.* v. *Board of Water Com'rs* (2d Cir. 1933) 66 F.2d 730, the court said, "Since completion of the contracts was taken over by the surety, *perhaps* the provision [for liquidated damages] would include tardy completion by the surety no less than by the contractor. *But this need not be decided,* for the claim is not for liquidated damages but for smaller actual damages [for which the bond expressly provided indemnity] . . . ." (*Id.,* at p. 735, italics added.) In Couch's authority, then, the question whether liquidated damages were covered by the bond and were recoverable from the surety was not decided.

Similarly, Miller and Starr state that ". . . if the owner is entitled to recover the liquidated damages from the contractor, the contractor's surety is also liable to the owner for the same amount of damages . . ." (1 Miller & Starr, Current Law of Cal. Real Estate (rev. ed. 1975) § 8.25, p. 363, fn. omitted [hereafter Miller & Starr]), but they cite two cases which do not wholly support this proposition. In the first, *London Guar. & Acc. Co.*

v. *Las Lomitas School Dist.* (1961) 191 Cal.App.2d 423 [12 Cal.Rptr. 598], the completing surety was held liable for liquidated damages, but the dispute was about whether substantial evidence supported the trial court's findings of fault on the part of the surety for the delay and whether another factual finding supported the judgment. There was no discussion of the legal question here under consideration. (*Id.*, at pp. 425-426.) In the other (*Dunne Inv. Co.* v. *Empire State S. Co.* (1915) 27 Cal.App. 208 [150 P. 405]), the surety bond expressly incorporated the contract *and* expressly provided the surety would pay liquidated damages in the event that the contractor failed to complete the building on time. (*Id.*, at p. 212.)

We find no authority supporting the proposition that the giving of a performance bond ipso facto subjects the completing surety to liability for liquidated damages provided for in the contract between the contractor and the obligee. To determine whether the completing surety is liable in such a case, the court must look to the contract and to the bond.

■ Surety contracts are construed according to the same rules that govern interpretation of all contracts. (*U. S. Leasing Corp.* v. *duPont* (1968) 69 Cal.2d 275, 284 [70 Cal.Rptr. 393, 444 P.2d 65]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 521, p. 444 [hereafter Witkin].) Civil Code section 1642 provides: "Several contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." This language has been broadened by judicial construction, so that it has been applied to several writings, even though they are not "contracts," for example. "Nor is the statute limited to contracts signed by the same parties and identifying the same subject matter. It applies to 'instruments,' 'papers' and 'contracts,' whether they expressly refer to each other or it appears from extrinsic evidence that they were executed as part of one transaction. [Citations.]" (Witkin, *supra*, Contracts, § 525, pp. 447-448.)

■ Thus, as a general rule, a contract performance bond will be read with the contract. "Since the express purpose of the contract performance bond is to secure the performance of the specified contract, it is obvious that the bond and the contract . . . should be construed together—this for the obvious reason that when a party enters into a contract to do certain work on certain terms, and procures a surety to guarantee the faithful performance of the work, the surety necessarily contracts with reference to the contract as made; otherwise it would not know what obligation it was assuming. And this is particularly so where the bond expressly declares that the contract is made a part of the bond and the terms of the contract are incorporated into the bond. [¶] Otherwise stated, the liability of a surety on a contractor's performance bond does not rest solely on the terms of the

bond, but grows out of and is dependent upon the terms of the contractor's contract, for the obvious reason that there can be no obligation on the part of the surety unless there has been a default by the contractor on his contract." (Couch, *supra*, § 47:20, pp. 240-242, fns. omitted.)

However, it does not follow from the fact that the contract and bond should be construed together that a performance bond necessarily guarantees performance of all covenants and agreements contained in the contract. This was the holding in *Crane Co.* v. *Borwick Trenching Corp., Ltd.* (1934) 138 Cal.App. 319 [32 P.2d 387]. Borwick agreed to furnish and install pipe for a water association and to furnish a performance bond. The surety gave a bond guaranteeing that Borwick would " '*faithfully perform the work contracted to be performed under said contract, . . .*' " (*Id.,* at p. 321, original italics.) After the work was completed, a material supplier sought to recover the cost of its goods from the surety. The Court of Appeal held that the bond did not secure such payment. It reasoned that although there was an implied covenant in the contract to pay for materials, "[t]urning to the bond involved here, however, we do not find a guarantee on the part of the surety that *all the covenants and agreements of the contracts will be performed,* but only the undertaking that the contractor 'shall faithfully *perform the work contracted to be performed*'." (*Id.,* at p. 323, original italics.)

In *Crane* the plaintiff was a stranger to the bond and to the contract the performance of which it secured. In the case at bench, however, the city was the party for whom the contractor was to perform its contract, and this was the contract which the surety guaranteed. Under these circumstances, the Supreme Court has held that a reference to the contract must be given broader interpretation. In *Roberts* v. *Security T. & S. Bank* (1925) 196 Cal. 557, 196 Cal. 575 [238 P. 673] overruled on another ground in *Peter Kiewit Sons' Co.* v. *Pasadena City Junior College Dist.* (1963) 59 Cal.2d 241, 245 [28 Cal.Rptr. 714, 379 P.2d 18], the bond executed by the surety referred to the contract between the owner (Mrs. Spires) and the contractor (Mr. Roberts) and briefly described the work to be done in accordance with plans and specifications " 'referred to in said contract, to which contract reference is' had." (*Id.,* at p. 563.) The Supreme Court held that the contract had "been made a part of the bond" by reference and that "the two instruments must be read together in order to determine the scope of [the surety's] undertaking. [Citation to N.Y. case omitted.]" (*Ibid.*)

The contract provided that its terms could be modified during the course of the work to allow for additions to or omissions from the work, and that such modifications should be agreed to in advance, such agreement including a statement of extension of time, if any, granted to the contractor. (*Ibid.*) The trial court found that during the course of the work, there had been

additions ordered by the owner and furnished by the contractor, but without agreements fixing extensions of time. (*Id.*, at pp. 563-564.) The judgment included an assessment of damages against the surety for delay in the contractor's completion of the contract. (*Id.*, at p. 561.) The surety argued that it should be held to the express terms of the contract and that the judgment therefore was improper. (*Id.*, at p. 564.)

The Supreme Court affirmed. It began with the proposition referred to above that the bond incorporated the contract by reference and that they should be read together, as an indivisible contract. (*Id.*, at p. 566.) "In other words, we must, in order to ascertain the nature and extent of the liability to which the sureties have bound themselves, examine the language of the undertaking by the light of the agreement, faithful performance of the terms of which it guarantees [citation]; or, as was said by this court, the extent of the surety's liability must be gathered from the language used, when read in the light of the circumstances attending the transaction. [Citation.]" (*Id.*, at pp. 566-567.) The court held that because the contract, which was incorporated in the bond, provided for modifications, and because the *contractor* was bound by the *contract* to ". . . well and faithfully keep its covenants and agreements and turn over the building free and clear of liens accruing by reason of the work described in the contract or any modification thereof, the *surety* must be held to have agreed that it will be equally bound in case changes are made . . . ." (*Id.*, at pp. 567-568, italics added.)

█ We find by a parity of reasoning that the bond given by Pacific, which expressly referred to the contract between Emerald and the city, incorporated that contract by reference, and that Pacific was therefore bound by the provisions in the contract for liquidated damages. █ █ █ █ This conclusion finds support not only in the express language of the bond and contract, as construed in accordance with applicable case law, but also in the public policy favoring liquidated damages provisions in public works contracts[2] and in the general rule that contracts should be construed against the party causing any ambiguity in them.[3]

---

[2]The State Contract Act (Pub. Contract Code, § 10100 et seq.) requires that every state contract contain a provision for liquidated damages for delay (Pub. Contract Code, § 10226 [formerly Gov. Code, § 14376]); and the Government Code expressly provides that local agencies may include provisions for liquidated damages for delay in contracts for public projects. (Gov. Code, § 53069.85; see Sweet, *Liquidated Damages in California* (1972) 60 Cal.L.Rev. 84, 121 [hereafter Sweet].)

[3]Witkin says, "On[e] of the commonest and most important illustrations of this rule is in insurance cases: Any ambiguity or uncertainty in the policy will be construed against the insurer in order to achieve the object of coverage for the losses to which the policy relates." (Witkin, *supra,* Contracts, § 536, p. 457.)

Bonds of the kind in question in the case at bench are generally considered contracts of insurance (Couch, *supra,* § 47:6, p. 229; see Ins. Code, § 100, describing "Surety" as one

*Effect of Abandonment on*
*Liability for Liquidated Damages for Delay*

■ Pacific contends that Emerald's abandonment of the project rendered the liquidated damages provision inoperable, leaving the city's sole remedy the seeking of actual damages. Authority is cited for this proposition, but we find it unpersuasive.

In *Bacigalupi* v. *Phoenix Bldg. etc. Co.* (1910) 14 Cal.App. 632 [112 P. 892], the owner sought to recover liquidated damages from the surety after the contractor abandoned the project. (*Id.,* at pp. 635, 637.) The court held: "Manifestly this [liquidated damages] clause has relation only to damages resulting from delay only, and has no bearing upon the measure of damages for an abandonment of the contract and failure to complete the work at all." (*Id.,* at p. 638.)

*Sinnott* v. *Schumacher* (1919) 45 Cal.App. 46 [187 P. 105] involved a contractor's suit in quantum meruit for the value of his work and materials which he supplied prior to abandoning the project because of an alleged violation by the owner of a duty to pay him an installment. (*Id.,* at p. 47.) The owner cross-complained against the contractor and his surety for additional costs and expenses incurred in completing the building. (*Id.,* at p. 48.) The trial court ruled in favor of the owner on the complaint and cross-complaint, and the Court of Appeal affirmed. The contractor and surety contended, inter alia, that the measure of damages sustained by reason of abandonment was fixed by the contract's provision for liquidated damages occasioned by delay. The court rejected this claim, stating, ". . . this provision of the contract has no application to a condition wherein the contractor is shown to have abandoned his contract without sufficient cause, in which case the right of the defendants to damages as a result of the plaintiff's breach of said contract could not be affected or limited by said provision of the contract for a penalty for delay in the completion of the structure beyond the stipulated time for such completion." (*Id.,* at pp. 52-53.)

In 1940, *Sinnott* was cited by the United States Supreme Court for the proposition that California law is ". . . that the stipulation in the contract as to the amount of damages in case of delay in completion was not applicable to delay after the contractor had abandoned the work." (*Six Companies* v. *Highway Dist.* (1940) 311 U.S. 180, 187-188 [85 L.Ed. 114, 117-

class of insurance, and § 105, defining "Surety insurance" as including ". . . the guaranteeing of performance of contracts . . ."), and therefore they are to be liberally construed in favor of the insured and strictly against the insurer if there is ambiguity (Couch, *supra,* § 47:31, p. 246).

118, 61 S.Ct. 186].)[4] Accordingly, the court reversed a judgment of the Ninth Circuit Court of Appeals, which had refused to follow this "rule." In our view, the district court decision (which the court of appeals had affirmed) correctly interpreted the holdings and scope of the *Sinnott* and *Bacigalupi* decisions. In *Six Companies* v. *Joint Highway Dist. No. 13* (N.D.Cal. 1938) 24 F.Supp. 346, the contractor abandoned the project when it was about 70 percent completed, alleging a right to rescind. The highway district arranged for completion of the work by others. Among the contested issues between the parties was whether the district was entitled to retain liquidated damages for delay and abandonment occasioned by Six Companies. (*Id.*, at p. 348.) Six Companies argued that the provision for liquidated damages ". . . can have no application to the delay occurring after abandonment." The federal district court's discussion of this point, which we find convincing, was as follows (*id.*, at p. 348): "In support of the contention that a provision for liquidated damages is inapplicable to a situation in which delay occurs because of abandonment, the Companies rely chiefly upon two California cases, namely Bacigalupi v. Phoenix Bldg. & Construction Co., 1910, 14 Cal.App. 632, 112 P. 892, and Sinnott v. Schumacher, 1919, 45 Cal.App. 46, 187 P. 105. These cases hold that a plaintiff may sue for actual damages when a defendant has breached his contract, notwithstanding a liquidated damage clause in the agreement. But this is not to say that a plaintiff, or cross-complainant, may not act upon the liquidated damage provision in a contract when he seeks damages for delay caused by an abandonment. That he may rely on such a clause is recognized in Southern Pacific Co. v. Globe Indemnity Co., 2 Cir., 1927, 21 F.2d 288, where a question much like the one in the principal case arose. There the court held that the aggrieved party may recover liquidated damages for delay, whether the contract is abandoned or not, the court saying (page 291): [¶] 'It is urged that a liquidated damage clause does not apply when work under the contract is abandoned by the contractor. . . . A close examination of the cases, however, does not in our opinion establish such a rule, and we can see no justification for it, at least when the contractor abandons after the time for completion has passed. In such a case some part of the liquidated damages has accrued before the repudiation. No intelligible reason has been suggested why the owner should lose his right to them because of subsequent repudiation.

" '. . . In these cases [Bacigalupi v. Phoenix Co. and like decisions], the plaintiff made no claim to collect liquidated damages for delay, as well as

---

[4]The court also cited *Bacigalupi* v. *Phoenix Bldg. etc. Co., supra,* 14 Cal.App. 632. (*Six Companies* v. *Highway Dist., supra,* 311 U.S. at p. 187, fn. 3 [85 L.Ed.2d at p. 117].)

the increased cost of completing the abandoned work. They are not, therefore, authorities for the alleged rule that he cannot do so. . . .' "[5]

The Ninth Circuit Court of Appeals agreed, holding that the fair meaning of the liquidated damages provision was that ". . . the period for which the damages are to be computed comprises the time between the agreed date of completion of the 'work' and its actual completion, whether by the Contractor or by the District. It is not for delay in completion of the contract but for delay in the completion of the work that the damages are provided. The clause does not in terms or by implication empower the Contractor to put an end to the accrual of the liquidated damages by the mere process of refusing to go ahead after the time for completion has passed." (*Six Companies* v. *Joint Highway Dist. No. 13* (9th Cir. 1940) 110 F.2d 620, 625.) The court of appeals erred, however, in stating that it was refusing to follow California "law" as purportedly stated in *Sinnott.* (*Id.,* at p. 626.) The United States Supreme Court quite properly corrected this apparent error of refusing to follow state law, as purportedly enunciated in the decision of the intermediate state appellate court which had never been disapproved by this state's highest court. (*Six Companies* v. *Highway Dist., supra,* 311 U.S. at p. 188 [85 L.Ed. at p. 117].)

The *Six Companies* cases therefore present this comedy of errors: The district court correctly interpreted the limited scope of the holdings in the California cases, and therefore reached a correct result under California law. The court of appeals also reached the correct result, but stated that it was contrary to California law, which it incorrectly interpreted and then disapproved and refused to follow. The Supreme Court then held that the court of appeals should have followed California law, which it too stated incorrectly, and reversed, reaching an ultimately improper result under the law of this state.

This misinterpretation was picked up by at least one commentator, who stated that in cases of abandonment California cases permit recovery only of actual damages. (Sweet, *supra,* at p. 123, fn. 182 and accompanying text.) Miller and Starr, on the other hand, correctly state the import of the *Sinnott* and *Bacigalupi* cases (*Sinnott* v. *Schumacher, supra,* 45 Cal.App. 46; *Bacigalupi* v. *Phoenix Bldg. etc. Co., supra,* 14 Cal.App. 632): "The contract measure of damages for delayed completion . . . does not *limit or reduce* the damages available to the owner because the contractor failed to

---

[5]The court then held that the contractor and its surety were liable for liquidated damages as provided in the contract for the time between the date set in the contract for completion and the time Six Companies would have taken to complete the project. (*Six Companies* v. *Joint Highway Dist. No. 13, supra,* 24 F.Supp. at p. 349.)

complete the construction. [Citation to *Bacigalupi.*]" (Miller & Starr, *supra,* § 8:38, p. 402, fn. 11, italics added.)

We hold that the contractor's abandonment of the project after the date set for completion does not alone render inapplicable the contract clause providing for liquidated damages for delayed completion.

### *Measure of Liquidated Damages to Be Applied*

In cases where the contractor abandons the work and the owner takes over completion of the project, it is unclear what the appropriate measure of damages is, that is, to what extent the owner should receive actual damages (difference between contract price and cost of complete project) and/or liquidated damages.[6] ■ We need not resolve that question, however, for where, as here, the surety assumes the contractor's obligations under the contract and completes the work, the surety stands in the same position to the contract as did the original contractor. (See *London Guar. & Acc. Co. v. Las Lomitas School Dist., supra,* 191 Cal.App.2d at pp. 424-425.)

We agree with the city's analysis of the situation: it is clear that Emerald would have been liable for liquidated damages had it, rather than Pacific, completed the work. Therefore, the rule of Civil Code section 2809, which requires that the obligation of a surety be no greater than that of its principal, is satisfied if Pacific is held liable for liquidated damages.

We hold that the measure of liquidated damages to be assessed against Pacific was properly fixed by the trial court as that which would have been used to assess damages against Emerald had it completed the contract.

### *Waiver*

■ Pacific claims that in making periodic payments to Emerald after the date set for completion without deducting liquidated damages, the city waived the right to offset such damages against the contract fund. Nonsense.

---

[6]One author suggests that recovery of both actual and liquidated damages is appropriate. (Sweet, *supra,* at p. 123.) Others indicate that only actual damages are recoverable. (Miller & Starr, *supra,* § 8:38, pp. 401-402.) We have found decisions which award both actual and liquidated damages (*United States* v. *Grogan* (D.Mont. 1942) 44 F.Supp. 871, reversed *sub nom., American Surety Co.* v. *United States* (9th Cir. 1943) 136 F.2d 437 [government's termination of contract rendered liquidated damages clause inapplicable under its specific provisions to that effect], 9th Cir. opn. affd. *sub nom., U. S.* v. *American Surety Co.* (1944) 322 U.S. 96 [88 L.Ed. 1158, 64 S.Ct. 866]; *City of Reading* v. *United States Fidelity & Guaranty Co.* (E.D.Pa. 1937) 19 F.Supp. 350, 352) and one, discussed above, which gave liquidated damages for the time the original contractor would have taken to complete the job (*Six Companies* v. *Joint Highway Dist. No. 13, supra,* 24 F.Supp. at p. 349).

The contract itself, in section 801.9, provided: "*Acceptance or Payment Does Not Constitute Waiver.* If the City accepts any work or makes any payment under this contract after a default by reason of delays, the payment or payments shall in no respect constitute a waiver or modification of any of the provisions in regard to time of completion and liquidated damages."

## City's Right to Offset Liquidated Damages

Pacific contends that when it elected to complete the contract it became entitled to utilize ". . . the entire undisbursed contract fund for purposes of completion . . ." and that the city should not be permitted to reduce that entitlement by offsetting liquidated damages. We view this assertion as simply begging the questions which we have already answered adversely to Pacific. ■ In any event, the authorities upon which it relies are not in point,[7] and we think this case comes within the general rule that a party may offset monies owed under a contract by the amount of damages suffered. (See, e.g., *Leatherby Ins. Co.* v. *City of Tustin* (1977) 76 Cal.App.3d 678, 685 [143 Cal.Rptr. 153]; see also Gov. Code, § 53069.85, providing for deduction of liquidated damages from amounts due to the contractor.)

## Interest on the Undisputed Amount

Final payment under the contract was due October 5, 1977. The amount due Pacific after the offset for liquidated damages, that is, the undisputed amount, was $57,892.93. The city avers that on or before the due date it informed Pacific that payment would not be forthcoming because it was the subject of outstanding litigation, but this is not supported by the record. The city alleged in one of its pleadings that on or about April 12, 1978, it tendered to Pacific a warrant in the sum of $57,892.93, in full payment of the claim arising out of the contract, and it attached to the pleading a copy of the warrant. City contends that this tender terminated any right Pacific may have to interest on that sum. Pacific counters that it was entitled to a payment of that amount without a waiver of its claims to the disputed amount, and that its rejection of tender did not affect its right to interest.

■ We agree with Pacific that on October 5, 1977, the $57,892.93 was a sum certain owing to it and that therefore it is entitled to interest on that amount from October 5, 1977, to the date of payment, which the parties agree was May 15, 1979. (See *Peter Kiewit Sons' Co.* v. *Pasadena City Junior College Dist., supra,* 59 Cal.2d at p. 246.) Because the parties are

---

[7]*Trinity Universal Insurance Company* v. *United States* (5th Cir. 1967) 382 F.2d 317 involved a liability of the contractor which was dehors the contract (taxes). In *Mayer* v. *Alexander and Baldwin, Inc.* (1975) 56 Hawaii 195 [532 P.2d 1007], the bond expressly exempted the surety from liability for damages occasioned by delay.

in agreement that the disputed interest amounts to $6,514.95, the case need not be remanded for further proceedings.

The judgment is modified by adding thereto the following provision: "Plaintiff is to recover interest on the undisputed amount of $57,892.93, from October 5, 1977, to May 15, 1979, to wit, $6,514.95, from defendant." In all other respects, the judgment is affirmed. Respondent shall be entitled to its costs on appeal.

White, P. J., and Scott, J., concurred.